IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DRB Group South Carolina, LLC, f/k/a Dan Ryan Builders South Carolina, LLC,<br><br>        Plaintiff,<br>v.<br><br>Stewart Title Guaranty Company,<br><br>        Defendant. | Case No. 2:25-cv-3330-RMG<br><br>**COMPLAINT** |

Plaintiff DRB Group South Carolina, LLC, f/k/a Dan Ryan Builders South Carolina, LLC ("DRB" or "Plaintiff") by and through its undersigned attorneys, hereby files this Complaint against Defendant Stewart Title Guaranty Company ("Stewart Title") and alleges:

### BACKGROUND

Plaintiff DRB bought a tract of land in Mount Pleasant, South Carolina. It also concurrently bought a title insurance policy from Defendant Stewart Title. Subsequently, DRB began to build a neighborhood on the land, and to advertise homes for sale. The homes are luxury, first-class construction, with purchase prices starting at $800,000. DRB soon had 17 purchase contracts in hand, with prospective buyers excited to move into their new homes as soon as construction was finished.

But, in the meantime, some nearby property owners sued DRB, alleging that DRB had no right to use the only road from which DRB could access its property or run utilities. DRB's insurance policy with Stewart Title states on the first page that it insures against loss or damage sustained by reason of "No right of access to and from the Land."

DRB thus tendered the defense of the lawsuit to Stewart Title, which acknowledged coverage and its duty to defend DRB in the lawsuit. Stewart Title retained defense counsel for DRB.

At the same time that it tendered the defense of the lawsuit, DRB invoked all applicable coverage, explaining to Stewart Title that it had purchase contracts on seventeen homes, but that it could not close on the homes because its title was unmarketable. No bank would go forward with a loan on property that (allegedly) did not have access, and no title insurance company (including Stewart Title) was willing to insure against the risk, either. Each of DRB's purchase contracts with prospective buyers has a clause allowing the purchaser to terminate the contract in the event that DRB is unable to convey marketable title. Multiple purchasers have thus terminated their contracts, and DRB is currently in the position of having no choice but to hold and maintain real property that it cannot convey.

Fortunately, DRB's insurance policy with Stewart Title states on the first page that it insures against monetary loss or damage sustained by reason of "Unmarketable Title." DRB's carrying costs on the seventeen homes, which are now move-in ready, are massive and unanticipated. Seeking much-needed relief, DRB invoked its coverage under the policy, and it notified Stewart Title that with each month that passes without closing on those homes, DRB is sustaining <u>significant</u> monetary losses. Unfortunately, despite DRB's entitlement to coverage under its insurance policy, Stewart Title refuses to compensate DRB for the financial losses and damages that it is sustaining. The purpose of this lawsuit is to require Stewart Title to pay DRB for its covered losses.

## PARTIES

1. Plaintiff DRB Group South Carolina, LLC, f/k/a Dan Ryan Builders South Carolina, LLC ("DRB" or "Plaintiff") is a South Carolina limited liability company and does business, and owns subject property, in Charleston County, South Carolina.

2. Defendant Stewart Title Guaranty Company ("Stewart Title" or "Defendant") is a Texas corporation, having its headquarters in Houston, Texas, and conducting business in Charleston County, South Carolina.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim arose in this district, including that the subject insurance policy was issued to DRB in this district, the insurance claims were made in this district, the wrongful denials of coverage to DRB occurred in this district, and the real property that is the subject of the title insurance policy is located in this district.

## FACTS

5. Plaintiff DRB brings this lawsuit to require Defendant Stewart Title to provide payment for Plaintiff's ongoing monetary losses and damages, which are expressly covered by DRB's title insurance policy issued by Stewart Title.

6. DRB owns certain real property located in Charleston County, South Carolina, in the Town of Mount Pleasant, as described in its deed which is attached hereto as <u>Exhibit 1</u> ("Land").

7. When it acquired title to the Land, DRB purchased a title insurance policy from Stewart Title.

8. A true and correct copy of DRB's Owner's Policy of Title Insurance with Stewart Title is attached hereto as <u>Exhibit 2</u> (the "Policy").

9. DRB bought the Policy specifically to protect itself against (*inter alia*) potential monetary losses and damages which could arise from risks to its title, including without limitation the risk of unmarketable title and the risk of alleged lack of access to or from the Land.

10. With respect to DRB's title to the Land, Stewart Title agreed to cover "loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of [*inter alia*]. . . Unmarketable Title . . . [or] No right of access to and from the Land . . . ."

11. The amount of insurance under the Policy is Three Million Seven Hundred Eighty Thousand Dollars ($3,780,000.00).

12. After purchasing the Land and obtaining the Policy, DRB subdivided its Land into lots, creating and constructing a neighborhood of luxury homes.

13. DRB advertised the homes for sale, and seventeen prospective purchasers entered into contracts with DRB to purchase the lots and homes, upon completion of construction.

14. Real estate closings on the lots were scheduled to occur in September of 2024, and the closings depended upon DRB's ability to convey marketable title to the Land.

15. The purchase contracts with prospective buyers each contain a provision permitting the buyers to be released from the contract in the event that DRB is unable to deliver marketable title.

16. Prior to the scheduled closings, certain neighboring landowners filed a complaint against DRB in a lawsuit in the Charleston County Court of Common Pleas, which is Civil Action No. 2023-CP-10-00947 (the "Lawsuit").

17. The Lawsuit alleges, *inter alia*, that DRB has no right to use a road—the only road—for access to or from its Land. Moreover, according to the allegations in the lawsuit, DRB has never had any right to use the road for access to its Land.

18. DRB tendered the defense of the Lawsuit to Stewart Title, which acknowledged its duty to defend DRB in the Lawsuit.

19. However, Stewart Title wrongly claimed that it has no obligation to indemnify or compensate DRB for the losses and damages that DRB is sustaining as a result of its inability to close on its purchase contracts with prospective purchasers.

20. The scheduled closing dates with prospective purchasers came and went, but DRB was unable to deliver marketable title, including due to the risk that there was no access to the Land.

21. Consequently, prospective purchasers began to invoke the provisions of their purchase contracts permitting them to be released from the contract in the event that DRB is unable to deliver marketable title.

22. In an effort to mitigate its damages, DRB took action to find an insurance carrier willing to insure title to the lots against the matters alleged within the Lawsuit.

23. But without certain access to the Land, including for utilities, no title insurer is willing to underwrite title insurance on DRB's Land such as would enable DRB to deliver marketable title to prospective purchasers.

24. Indeed, Stewart Title itself told DRB that it would not insure title to the units on which DRB had purchase contracts, due to lack of an access easement for ingress and egress, and the lack of an easement for utilities:

> Sorry for the delayed reply on the underwriting question – Underwriting advises that without either a final, non-appealable order declaring John Ballam Road public or an easement for ingress and utilities over or along the road, they're not able to insure the lots in the new subdivision.
>
> I'm in the office today and tomorrow if you want to discuss.
>
> MARK V. BORST, ESQ.
> Manager – Complex Claims
> Stewart Title Guaranty Company
> 1360 Post Oak Blvd., Suite 100, MC 14-1
> Houston, TX 77056
> O (713) 625-8253 | F (781) 697-3335
> stewart.com | mborst@stewart.com



25. Because it cannot deliver marketable title to the Land, DRB is currently in the position of having to hold and maintain real property that it cannot convey.

26. DRB's carrying costs on those seventeen homes, which are each now move-in ready, are massive and unanticipated.

27. DRB invoked its coverage under the Policy on or about September 18, 2024, and it further notified Stewart Title that—with each month that passes without closing on those homes—DRB is sustaining significant monetary losses.

28. In the seven months since it invoked its coverage under the Policy, DRB has sustained

actual financial losses in an amount of more than half a million dollars, which losses are anticipated by DRB to continue at a rate of more than Seventy-Seven Thousand Dollars per month ($77,000/month).

29. Despite DRB's entitlement to coverage under its policy, Stewart Title refuses to compensate DRB for the significant losses and damages that it is sustaining on an ongoing basis.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

30. Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

31. The Policy is a valid and enforceable insurance contract between DRB and the Defendant Stewart Title.

32. DRB seeks a declaration from this Court of its rights under the Policy.

33. The Policy provides coverage for risks specifically including "loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of [*inter alia*]. . . Unmarketable Title . . . [or] No right of access to and from the Land . . . ."  (*See* Ex. 2, "COVERED RISKS").

34. The Policy defines "Unmarketable Title" as title affected by an alleged matter that permits prospective purchasers to be released from their obligation to purchase:

> (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

(*See* Ex. 2, "DEFINITION OF TERMS").

35. The underlying access Lawsuit alleges that DRB has no right of access to and from the Land, over and across the only road leading to the Land, and no right to run

utilities over or along the Lawsuit's plaintiffs' property.

36. The title conditions alleged in the Lawsuit are and were latent defects with the title, unknown to and undiscoverable by DRB, and they are precisely the sort of risks that DRB bought title insurance to protect itself against.

37. With regards to the matters alleged in the access Lawsuit, and unbeknownst to DRB, DRB's title has been defective and unmarketable since before DRB acquired title to the Land.

38. With regards to the matters alleged in the access Lawsuit, DRB's title is currently defective and unmarketable.

39. Moreover, DRB's title to the Land is affected by alleged matters that permit prospective purchasers to be released from their obligations to purchase, because of contractual conditions requiring the delivery of marketable title.

40. Moreover, the allegations of the access Lawsuit demonstrate doubt as to the validity of DRB's title, which predates DRB's acquisition of its title.

41. Moreover, it is evident that DRB holds title which a reasonable purchaser, well-informed as to the facts and their legal significance, would not be ready and willing to accept.

42. Moreover, no title insurer, including Stewart Title, is willing to underwrite title insurance on DRB's Land such as would enable DRB to convey it to prospective purchasers.

43. In fact, DRB's title is—and was at the time that DRB acquired it—unmarketable, and DRB cannot convey it to prospective purchasers.

44. As a result of the unmarketability of DRB's title, DRB has been unable to close on the existing purchase contracts for the purchase of the Land's subdivided lots.

45. As a result of the unmarketability of its title, prospective purchasers have terminated their purchase contracts on the Land's subdivided lots.

46. As a result of the unmarketability of its title, DRB has been and is sustaining ongoing, recurring monetary losses.

47. As of the date of this filing, DRB has sustained monetary damages in an amount of approximately Five Hundred Eight Thousand Five Hundred Forty-Five Dollars ($508,545), which amount will continue to increase.

48. The Policy covers monetary losses and damages sustained by reason of unmarketable title and lack of access to the Land.

49. DRB is entitled to a declaration from this Court holding that DRB is entitled to coverage under the Policy for the ongoing monetary losses that it is sustaining as a result of its unmarketable title and lack of access to the Land.

50. DRB is entitled to a declaration from this Court that Stewart Title is required, and has been required, to provide DRB with indemnity under the Policy, including payment for DRB's monetary losses and damages to date.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract)**

51. Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

52. By issuing the Policy, Defendant Stewart Title entered a binding contract for title insurance on August 6, 2021, pursuant to which Defendant agreed to indemnify DRB

against any damages or losses sustained by DRB by reason of a covered title risk, including but not limited to unmarketable title and lack of access.

53. DRB's title is unmarketable, including under the Policy's definition and South Carolina law.

54. DRB notified Defendant Stewart Title of its unmarketable title and invoked all applicable coverage under the Policy.

55. Despite DRB's claim for losses sustained by reason of the covered risks to its title, Defendant Stewart Title has refused to pay the required amounts due under the Policy.

56. Defendant Stewart Title is in breach of its contract.

57. DRB is and continues to be damaged in the amount of its actual losses, which are approximately Five Hundred Eight Thousand Five Hundred Forty-Five Dollars ($508,545) as of the date of the filing of this action, as well as its ongoing actual and consequential damages, plus the attorney's fees and costs of this action.

### FOR A THIRD CAUSE OF ACTION
### (Bad Faith Refusal to Pay Insurance Claim)

58. Plaintiff reasserts the allegations of the previous paragraphs as if fully set forth herein.

59. Defendant Stewart Title owed DRB a duty of good faith and fair dealing and implicitly covenanted to refrain from doing anything to impair DRB's right to receive benefits under the insurance contract.

60. Stewart Title, knowing that DRB's claim is wholly valid and should be paid, has wrongfully and in breach of the implied covenant of good faith and fair dealing, withheld and denied the benefits due to DRB.

61. In denying DRB's claim for benefits, Stewart Title has acted wrongfully, unreasonably, and in bad faith, including but not limited to by refusing and continuing to refuse to give reasonable interpretations to the provisions of the Policy, and/or any reasonable application of the Policy's provisions to DRB's claim, and by acting to protect its own financial interest at the expense of DRB's rights.

62. Stewart Title has willfully misinterpreted and/or willfully ignored its policy provisions in its attempt to evade providing benefits under the Policy, in an effort to protect its own financial interest at the expense of DRB's rights.

63. Stewart Title's refusal to pay benefits due has compelled DRB to engage legal counsel to initiate litigation to recover such benefits.

64. As a direct and proximate result of the conduct of Stewart Title, DRB has sustained substantial compensable losses including the withheld benefits, consequential damages, and attorney's fees.

65. Defendant Stewart Title's actions were willful, wanton, and/or in reckless disregard of DRB's rights, and DRB is entitled to actual and consequential damages, punitive damages, interest and costs, and attorney's fees against Stewart Title.

**WHEREFORE**, DRB requests that this Honorable Court grant to it the following relief against Defendant Stewart Title:

1. Actual and consequential damages;
2. A declaratory judgment as set forth above;
3. Pre-judgment and post-judgment interest;
4. Attorney's fees and costs;

5. Punitive damages;

6. The costs of this action; and

7. For all other such relief as is just and proper.

DRB requests a trial by jury.

                Respectfully submitted,

                FORD WALLACE THOMSON LLC

                s/ Ainsley F. Tillman
                Ainsley F. Tillman (Fed. Bar No. 12847)
                    Ainsley.Tillman@FordWallace.com
                Robert E. Byrd (Fed. Bar No. 14367)
                    Robert.Byrd@FordWallace.com
                715 King Street
                Charleston, SC  29403
                (843) 277-2011
                www.FordWallace.com
                *Attorneys for Plaintiff*

Charleston, South Carolina
April 18, 2025